**FILED**

**AUG 1 6 2007**

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| JEFFREY A. KING and JOYCE L. KING, | ) | No. 2:06-bk-04089-JMM |
| | ) | |
| | ) | **MEMORANDUM DECISION** |
| Debtors. | ) | |

On July 24, 2007, this court heard testimony and received exhibits concerning two matters:

1.     The Debtors' efforts to confirm their chapter 13 plan; and

2.     A creditor's motion to dismiss their case.

The Debtors were represented by Allan D. NewDelman; the creditor, Joseph Rocco, represented himself. After consideration of all of the evidence, as well as the administrative file in this case, the court now issues its rulings.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (L) and § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (L).

## FACTS

1.     The Debtors filed a voluntary chapter 13 case on December 5, 2006.

1    2.    The Debtors proposed a 60-month plan, paying $2,300 per month to the Trustee.

2    They are current on their payments to the Trustee. They received a moratorium for one monthly payment.

3    3.    The Debtor, Jeffrey King is an attorney, earning approximately $8,200 per month

4    (Schedule I). The Debtor, Joyce King, is a human resources director, earning approximately $6,245 per

5    month (Schedule I).

6    4.    Over the term of the plan, the Debtors propose to pay $138,000 to the Trustee. After

7    deduction for the Trustee's expenses (up to 10%), the Trustee would have, available for creditors, the sum

8    of $124,200.

9    5.    Secured claims on the Debtors' residence (two deeds of trust) would be paid in the

10   normal course, "outside" of the plan. However, home arrearages of $1,727 are to be paid within the plan.

11   A lien on a Chevrolet Tahoe would be paid through the plan, in the sum of $11,077.

12   6.    There are no priority creditors, such as taxing entities.

13   7.    Unsecured claims (excluding duplicates) filed in this case, total $111,456.98 (Claims

14   Register).

15   8.    The plan's funding provides for 100% to unsecured creditors over the plan's life.

16   9.    The largest unsecured creditor is Joseph Rocco, who filed claims totaling $74,358.34

17   (Claim Nos. 5 and 6). Mr. Rocco is a former law partner of Mr. King, and Mr. Rocco holds a judgment for

18   said sum.

19   10.    There are a total of six unsecured creditors, including three credit cards with an

20   aggregate balance of approximately $24,000 (Claim Nos. 7, 8, and 9), and an unsecured claim of the IRS

21   for $12,339.77 (Claim No. 1).

22   11.    Most of the Debtors' assets are either exempt or otherwise not subject to liquidation

23   in a chapter 7 bankruptcy. This latter category includes the Debtors' approximate $69,228 in IRA or 401(k)

24   retirement savings. *Patterson v. Shumate*, 112 S.Ct. 2242 (1992).

25   12.    Exemption claims made by the Debtors have not been objected to by any creditor.

26   FED. R. BANKR. P. 3007; *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644 (1992).

27   13.    In a liquidation proceeding, unsecured creditors would realize only about 17-33% on

28   the dollar.

1      14.    In this chapter 13 proceeding, all unsecured creditors will be paid in full.

2      15.    The chapter 13 filing was precipitated by unsecured creditor Joseph Rocco's post-

3  judgment garnishments, and his collection activity aimed at immediately collecting upon his judgment.

4      16.    The chapter 13 Trustee has recommended confirmation, and has expressed no

5  objection based upon feasibility.

6      17.    The Debtor, Jeffrey King, is an Arizona attorney who has been in practice fo 20 years.

7  He currently works as a salaried attorney for the law firm of Kent & Wittekind, P.C.

8      18.    Mr. King testified that he filed the chapter 13 proceeding in order to pay his creditors

9  100% of their claims, while at the same time being able to retain the community's exempt and non-exempt

10  assets, and not be subject to ongoing, emotionally draining, collection activities.

11      19.    Mr. King noted that one of the benefits of the bankruptcy case was to allow him to

12  continue prosecuting an appeal of the state court judgment held by Mr. Rocco, without posting a supercedeas

13  bond.  Instead the automatic stay of 11 U.S.C. § 362(a) serves that purpose.  At the same time, chapter 13

14  requires that a good faith plan be filed.

15      20.    Mr. King testified that he and his wife filed the chapter 13 case and the plan in good

16  faith.

17

18                           **ISSUES**

19

20  A.    Is the Debtors' plan confirmable?

21  B.    Did the Debtors file the chapter 13 case in good faith?

22

23                             **LAW**

24

25      In order for the court to confirm a chapter 13 plan, the Debtors must prove each of the

26  elements of 11 U.S.C. § 1325(a), and (when an unsecured creditor objects to confirmation), § 1325(b) as

27  well.

28

3

1        In the instant case, objecting creditor Joseph Rocco has narrowed his objection to

2    confirmation solely to the good faith elements for initially filing the plan, and for the plan itself. 11 U.S.C.

3    § 1325(a)(3) (plan proposed in good faith), and (a)(7) (filing of the plan was in good faith).

4        In the Ninth Circuit, the elements of "good faith" are rooted entirely in objective facts,

5    requiring a court to consider the "totality of the circumstances." *In re Goeb*, 675 F.2d 1386 (9th Cir. 1982);

6    *In re Leavitt*, 171 F.3d 1219 (9th Cir. 1999).

7        The objecting creditor, here, has not cited a single case wherein Debtors, who proposed to

8    pay--and who were capable of feasibly paying--100% to their unsecured creditors were found to have filed

9    in bad faith.

10        First, the court must look at what unsecured creditors might expect to receive in a chapter 7

11    liquidation. After deduction for valid secured claims and statutory exemptions (Schedules A-D), it would

12    appear that immediately liquid assets would total $40,052. From that figure, the court deducts $4,750 as a

13    chapter 7 trustee's compensation, as derived from 11 U.S.C. § 326(a). Comparing that remaining total to

14    the $111,456 in filed, non-duplicative unsecured claims leaves a percentage, to each creditor, of 33% on the

15    dollar. Here, under the Debtors' plan, each creditor will receive three times what they would receive on

16    liquidation. And, this analysis does not factor in the real estate agent's fee of 6% on a sale of the Debtors'

17    $385,000 home. That figure would drop the $38,200 non-exempt equity to $15,100, and the unsecured

18    creditors would then realize but 17% on the dollar.

19        These liquidation scenarios clearly illustrate that a 100% plan is salutary for both the general

20    creditor body as well as the Debtors. Creditors get paid monthly, without resorting to lengthy and expensive

21    collection efforts, while Debtors retain their property but pay their creditors over time. Such a solution,

22    especially in a 100% plan, is a boon for both creditors and Debtors. In *In re Warren*, 89 B.R. 87 (Bankr. 9th

23    Cir. 1988) the Ninth Circuit Bankruptcy Appellate Panel applied an 11-point test to the "totality of

24    circumstances" standard first enunciated by the Ninth Circuit in *Goeb*. *Warren* has never been specifically

25    endorsed by the Ninth Circuit, but neither has it been criticized. In *Leavitt* the Circuit guided lower courts

26    by noting four factors (some of which are subsumed within the BAP's *Warren* analysis), to wit:

27        1.    Whether the debtor misrepresented facts, unfairly manipulated the

28            Bankruptcy Code, or filed the petition or plan in an inequitable manner;

4

2.    Whether the debtor's history of filings and dismissals warrant a finding of bad faith;

3.    Whether the debtor only intended to defeat state court litigation; and

4.    Whether egregious behavior is present.

In the case at bar, the evidence did not show any significant or misleading inaccuracies in the schedules or required information. In addition, there was no prior history of any bankruptcy proceeding by the Debtors, nor was there any showing of dishonesty or unfair manipulation. To the contrary, rather than liquidate, these Debtors have chosen to attempt to repay all of their debts over a five-year period of commitment. No egregious behavior is present in choosing this legal course of action which pays creditors 100% of their debts, rather than 17-33% only.

The only hook upon which the objecting creditor here hangs his argument is that the Debtors only intended to defeat his state court collection efforts. This argument also fails, however, because the Debtors' plan does not seek to <u>defeat</u> or thwart collection of the judgment. Instead, the Debtors' plan schedules it out in a orderly fashion, on a par with all other creditors of the same class. And, happily, the plan proposes to pay 100% of any such allowed claim.

Merely because the Debtors have not acquiesced in the state court judgment, but have pursued an appeal thereof is not a legal ground to deny them chapter 13 relief. A debtor may, indeed must, finally liquidate all legitimate claims. Here, this court abstained to allow the parties to finally conclude their dispute and ultimate liquidation of the claim at the state court level. *See* 11 U.S.C. § 305 and FED. R. BANKR. P. 6009. Once Mr. Rocco's judgment reaches finality, it must be paid at whatever amount it is determined to be.

To this court's eye, any solution tending to voluntary payment of a judgment debt, rather than the usual painstaking involuntary battle for dollars, should be applauded rather than fought.

Turning now to the 11-point *Warren* test, for assistance and to test the proof of good / bad faith, each factor will be addressed.

5

## Factor No. 1 - Amount of Proposed Payment and Amount of the Debtors' Surplus

The Trustee has found the monthly $2,300 payment to be feasible, and the Debtors have adhered to that schedule (with one moratorium) since filing. Eventually, they can pay in enough to cure their house arrearage and pay each of their unsecured creditors 100% of their claims.

The Debtors have satisfied the first *Warren* factor.

## Factor No. 2 - Employment History, Ability to Earn, and Likelihood of Future Increases

Together, the Debtors earn a gross amount of $14,445 per month. They take home $10,974 (Schedule I). In 2006, they also received bonuses totaling $7,500. Mr. King is an attorney in good standing, employed by a law firm. Mrs. King is in the human resources department at Nautilus Insurance Company, where she has been employed for approximately 15 months. The likelihood of each increasing their earnings is good. They have proven abilities to earn good livings.

Factor 2 is satisfied in the Debtors' favor.

## Factor No. 3 - Probable or Expected Duration of the Plan

The plan will last for five years. During that time, adequate funding can be made, sufficient to repay all unsecured creditors and also carry the cost of the Trustee doing so.

This factor is favorably satisfied.

## Factor No. 4 - Scheduled or Pleading Inaccuracies

There was no proof that there exists any significant inaccuracy in the Debtors' schedules or other pleadings, or in the proffered testimony.

This factor also resolves in the Debtors' favor.

6

## **Factor No. 5 - Preferential Treatment Between Classes**

The plan does not discriminate against, nor prefer any class of creditors. All are treated fairly and in the manner provided by law.

This factor is satisfied.

## **Factor No. 6 - Extent of Secured Creditor Modification**

This factor was not challenged by the objecting creditor. No secured creditor has objected to its treatment, and it further appears that the treatment for each is within the law's parameters.

Factor No. 6 resolves itself in favor of the Debtors.

## **Factor No. 7 - Whether Any Debt Might be Non-Dischargeable**

This factor is simply neutral, as all allowed unsecured claims will be paid in full.

No adverse effect applies to this factor, nor to the Debtors' plan.

## **Factor No. 8 - Special Circumstances**

No special circumstances, such as medical expenses or conditions, exist here. This factor is simply not applicable.

## **Factor No. 9 - Frequency of Bankruptcy Filings**

These Debtors have never before sought bankruptcy relief. This factor, therefore, may not be construed against them. On the contrary, since this is their first foray into the bankruptcy arena, this factor then assists the Debtors.

7

1

## **Factor No. 10 - Motivation and Sincerity**

2

3          The motivation for filing was to avoid the emotional turmoil from ongoing judgment

4   collection activity, and to repay any allowed debt in an orderly manner. That a side benefit of the decision

5   is to gain the automatic stay does not lessen the legitimate aim of retaining assets while paying debt in full,

6   over time.

7          The court discerns no improper or unfair purpose in connection with this filing. Indeed, it

8   is similar to countless cases in this court where the bankruptcy laws allow some breathing room to debtors,

9   to enable them to gain back financial equilibrium without undue sacrifice to their emotional well-being.

10          No adverse motive was discerned here.

11          Thus, Factor No. 10 is resolved favorably for the Debtors.

12

13                    **Factor No. 11 - Burden to the Trustee**

14

15          The evidence disclosed nothing extraordinary in the way of trustee burdens. The Trustee here

16   will cut approximately 10-15 checks per month, a normal amount for a case of this type. No burdens which

17   are not fairly compensable were noted to adversely affect the Trustee in this case.

18          This factor resolves in favor of the Debtors.

19

20                              **CONCLUSION**

21

22          Upon consideration of all of the evidence, as well as the entire administrative record in this

23   case, the court concludes that the Debtors have satisfied all of chapter 13's requirements for confirmation,

24   including those dealing specifically with the good faith required in filing the petition, as well as in proposing

25   of the plan itself.

26

27

28

8

# RULING

A separate order will be entered which:

A.     Overrules the creditor Joseph Rocco's objections to the Debtors' chapter 13 plan;

B.     Confirms the Debtors' chapter 13 plan; and

C.     Denies the creditor Joseph Rocco's motion to dismiss.

FED. R. BANKR. P. 9021. Once the order is entered, any aggrieved party shall have ten (10) days within which to appeal. FED. R. BANKR. P. 8002.


DATED: August 16, 2007.

_James M. Marlar_
JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE

COPIES served as indicated below
this  16  day of August, 2007, upon:

Allan D. NewDelman
Allan D NewDelman PC
80 E. Columbus Ave.
Phoenix, AZ 85012
Attorneys for Debtors                                Email: anewdelman@uswest.net

Russell A. Brown, Trustee
P.O. Box 33970
Phoenix, AZ 85004-3970
Chapter 13 Trustee                                   Email russell.a.brown@azbar.org

Joseph P. Rocco
Rocco Law Firm
7325 N. 16th St., Suite 120
Phoenix, AZ 85020
*Pro Se*                                             U.S. Mail

Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ  85003-1706                               U.S. Mail


By /s/   M. B. Thompson
        Judicial Assistant

9